[Cite as *State v. Upchurch*, 2018-Ohio-3804.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                              :

       Plaintiff-Appellee,              :

                                                               No. 17AP-558

v.                                         :      (C.P.C. No. 16CR-6561)

Roy E. Upchurch,                           :      (REGULAR CALENDAR)

       Defendant-Appellant.             :

---

D E C I S I O N

Rendered on September 20, 2018

---

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Seth L. Gilbert*, for appellee.

**On brief:** *Campbell Law, LLC,* and *April F. Campbell*, for appellant.

---

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Defendant-appellant, Roy E. Upchurch, appeals a judgment of the Franklin County Court of Common Pleas entered on July 20, 2017 sentencing him to two years of community control following conviction by the court at a bench trial on the offense of possessing a weapon while under a disability. Because we find that that his conviction was sufficiently supported and not against the manifest weight of the evidence, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On November 28, 2016, a Franklin County Grand Jury indicted Upchurch for a single count of possessing a weapon while under a disability in violation of R.C. 2923.13. (Nov. 28, 2016 Indictment.) Upchurch pled not guilty on December 12. (Dec. 12, 2016 Plea Form.) Following a jury waiver, the case proceeded by bench trial on May 30, 2017. (May 30, 2017 Jury Waiver.)

{¶ 3}  Four witnesses testified at trial and a number of exhibits were introduced. Plaintiff-appellee, State of Ohio, offered the testimony of three witnesses and Upchurch offered the testimony of one.  The first witness was a pawn shop clerk, Ruslanas Jerochinas, who testified that, in the course of his duties for the Central Point Pawn Shop, he purchased a SCCY Industries CPX-1 semi-automatic pistol from Upchurch.  (Tr. at 10, 25-27.)  He lacked an independent recollection of the transaction, but he testified that he wrote out the pawn shop receipt.  *Id.*  That receipt, which appears to have been signed by Upchurch, indicated that Upchurch of 234 Akeya Court had sold the pistol for $120 on September 18, 2013.  *Id.*; State's Ex. C-C1.  Although the serial number on the pistol was significantly scratched, Jerochinas testified that he could read it and our examination of the pistol confirms that the serial number was scratched but legible and reads: 040917.  (Tr. at 30, 45; State's Ex. A1.)  All the pawn shop records introduced into evidence also indicate the serial number is 040917.  (State's Exs. B-C2.)  According to the pawn shop's records and Jerochinas' testimony, the same pistol, serial number 040917, was previously sold to a female by the name of Zadie Upchurch on September 8, 2011.  (Tr. at 22-24; State's Ex. B.)

{¶ 4}  Jerochinas testified that because the serial number was scratched but still legible he first attempted to contact SCCY and then the ATF (which we understand to be the Bureau of Alcohol, Tobacco, Firearms and Explosives) to see if the serial could be repaired and the gun readied for sale.  (Tr. at 38-42, 56-60.)  However, for reasons not apparent in the record, there was a considerable delay in dealing with the pistol.  *Id.* According to Jerochinas, it essentially sat in its box on his desk for over one and one-half years until, on January 22, 2015, an ATF officer, having been notified of the weapon's partially effaced serial number, visited the pawn shop and took possession of the pistol.  (Tr. at 16, 30, 67-68; State's Ex. C2.)  Jerochinas examined State's Exhibit A1 and identified it as the gun he had purchased from Upchurch.  (Tr. at 42-44.)

{¶ 5}  The ATF officer next testified that on January 21, 2015, the regulatory branch of the ATF notified him that a pawn shop had received a firearm with the serial number obliterated.  (Tr. at 74, 76-77.)  He stated he went to examine it the following day and confiscated the firearm.  (Tr. at 76-78.)  During the trial, he examined State's Exhibit A1 and identified it as the gun he had confiscated from the Central Point Pawn Shop on January 22, 2015.  (Tr. at 83-84.)  He testified that, based on paperwork given to him by

the pawn shop, he went to 234 Akeya Court on February 24, 2015 and met Upchurch, whom he positively identified in court. (Tr. at 86.) During the conversation on February 24, Upchurch admitted he had a prior domestic violence conviction and the officer's background record search corroborated this admission. (Tr. at 82, 88; State's Ex. E2.) The ATF officer testified that Upchurch admitted to having pawned a gun but denied scratching the serial or that Zadie Upchurch (whom he admitted was his sister) had given it to him. (Tr. at 87-88.) The officer testified that the serial was difficult to read but not completely unreadable and that he sent the gun to the police laboratory to be tested for operability. (Tr. at 89, 107-09.)

{¶ 6} An expert lab examiner testified next. She testified that she received State's Exhibit A1 for testing and found the weapon operable. (Tr. at 89, 116, 123; State's Ex. D.) She testified that although it was difficult to read the third number in the serial, the gun's serial appeared to be 040917 or 048917. (Tr. at 124.)

{¶ 7} The final witness, and the only defense witness, was the pawn shop president or owner. (Tr. at 141.) He testified that after the gun was purchased, it was left on a desk in the pawn shop office and remained there until it was confiscated by the ATF. (Tr. at 142-43, 157-58.) Yet, after being confronted with a recording of him telling a defense investigator that it had been kept in a safe, he equivocated as to whether it was always kept on the desk or sometimes put in the safe. (Tr. at 142-50.)

{¶ 8} During closing, the defense argued that there was reasonable doubt as to whether the weapon was operable at the time Upchurch possessed it, that there was no way to be certain what happened to it in the one and one-half year period between when he sold it and when the ATF confiscated it, and that given the partially effaced serial number, there was room for reasonable doubt about whether the gun Upchurch sold was the same gun tested and found to be operable. (Tr. at 166-79.) In a hearing on June 5, 2017, the trial court orally announced its verdict and found Upchurch guilty of having possessed a weapon while under a disability. (Tr. at 185-93.) On July 20, 2017, the trial court sentenced Upchurch to two years of community control. (Tr. at 200; July 20, 2017 Jgmt. Entry at 1.)

{¶ 9} Upchurch now appeals.

## II. ASSIGNMENT OF ERROR

{¶ 10} Upchurch assigns a single error for review:

> The state's evidence that Upchurch possessed an operable weapon while under a disability is legally insufficient and weighs heavily against his conviction: The state did not establish that the firearm Upchurch sold was operable when he sold it.

## III.  DISCUSSION

{¶ 11}  In his only assignment of error, Upchurch alleges that his conviction was not supported by sufficient evidence.  Sufficiency is:

> "[A] term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law.

*Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 11, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *Black's Law Dictionary* 1433 (6th Ed.1990).  "In reviewing a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' "  *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, ¶ 47, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 12}  Upchurch also argues, as part of the error he assigns to the trial court judgment, that his conviction was against the manifest weight of the evidence.  The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' * * *, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' "  *Eastley* at ¶ 10, quoting *Thompkins* at paragraph two of the syllabus.

> Weight of the evidence concerns "the inclination *of the greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. * * * . Weight is not a question of mathematics, but depends on its *effect in inducing belief*."

(Emphasis sic.) *Eastley* at ¶ 12, quoting *Thompkins* at 387; *Black's* at 1594.  In manifest weight analysis, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony." *Thompkins* at 388, quoting *Tibbs v. Florida*, 457

U.S. 31, 42 (1982). " 'The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 13} Upchurch has never disputed that he was convicted of a disqualifying prior conviction. (Tr. at 129; State's Ex. E2.) So our review focuses on the issue of whether he "ha[d], carr[ied], or us[ed] any firearm" while under that admitted disability. R.C. 2923.13(A). The evidence at trial established that Upchurch sold a gun to Central Point Pawn Shop and Upchurch admitted to having done so to an ATF officer. (Tr. at 25-27, 87-88; State's Ex. C-C1.) During closing, Upchurch argued that there was doubt as to whether the gun he pawned was the same as the gun subsequently tested and found to be operational. (Tr. at 167.) But the serial number 040917 is the same number recorded throughout the records introduced (State's Exs. B-C2), that same serial number legibly appears on the gun itself (State's Ex. A1), and the ATF agent testified that State's Exhibit A1 is the gun he confiscated from the pawn shop and sent to the lab for testing. (Tr. at 83-84, 89, 107-09.) On appeal, Upchurch constrains his argument to the alleged failure of the State to "establish that the firearm Upchurch sold was operable when he sold it." (Upchurch Brief at 5.) The legal definition of a firearm includes an unloaded firearm or any firearm that can readily be rendered operable.[1] The evidence shows only that Upchurch's exercise of control over the firearm amounted to selling it to a pawn shop, not using it for other criminal purposes. But R.C. 2923.13 requires only a finding that he possessed the firearm. Thus, operability is an issue.

---

[1] Ohio Revised Code, section 2923.11(B), defines whether a weapon qualifies as a "firearm" as follows:

> (1) "Firearm" means any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. "Firearm" includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable.

> (2) When determining whether a firearm is capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant, the trier of fact may rely upon circumstantial evidence, including, but not limited to, the representations and actions of the individual exercising control over the firearm.

{¶ 14} There was evidence that the weapon was operable or could have been readily rendered operable. The pawn shop operator bought the gun from Upchurch in September 2013. (Tr. at 25-27; State's Ex. C-C1.) After that, it sat on a desk (and may also have spent some time in a safe) until it was seized in February 2015 by an ATF officer. (Tr. at 16, 30, 67-68, 142-50, 157-58; State's Ex. C2.) The ATF officer sent it to a crime lab where it was tested and found to be operable in July 2015. (Tr. at 89, 123; State's Ex. D.)

{¶ 15} The trial court was able to rely on testimony establishing that the gun did nothing but sit in a box on a desk at the pawn shop during the time between when Upchurch sold it and when it was tested and found to be operational. Though defense counsel speculated that it may have been worked on by a pawn shop employee, no evidence to support that speculation was ever introduced and evidence was presented to the contrary. (Tr. at 136.) Under those circumstances, since the gun was operable when recovered and since there is not evidence of repairs having been made to it between when it was recovered and tested in June-July 2015 and when it was sold in September 2013, R.C. 2923.11(B)(2) permits the inference that the firearm was operable when Upchurch sold it. Accordingly, a "rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt," and we do not find that "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387; *Monroe* at ¶ 47.

{¶ 16} We overrule Upchurch's assignment of error.

## IV. CONCLUSION

{¶ 17} The evidence established that Upchurch sold a gun to a pawn shop, that the pawn shop made no effort to repair or service it, and that the gun was operable when seized from the pawn shop over one and one-half years after Upchurch sold it and tested for operability by an ATF officer. Under such circumstances, the finder of fact was permitted to infer that the firearm was operable at the time of sale when Upchurch sold it to the pawn shop. Upchurch's conviction was not insufficiently supported nor against the manifest weight of the evidence. We affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and LUPER SCHUSTER, J., concur.

———————————